IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **TAHREIK WATFORD** | : | **NO. 23-523** |
| | : | |

**Perez, J.**  May 16, 2024

**MEMORANDUM**

On December 14, 2023, Defendant Tahreik Watford was charged by indictment with unlawful possession of a firearm as a previously convicted felon. Mr. Watford has moved to dismiss the one-count indictment brought under 18 U.S.C. § 922(g)(1), arguing that the statute is unconstitutional on its face and as applied to him individually. For the reasons set forth below, this Court will deny his motion.

**I.    BACKGROUND**

On October 14, 2023, police officers arrested Defendant Tahreik Watford, then on probation, in the area of 1700 S. Ringgold Street in Philadelphia, Pennsylvania. ECF No. 23 at 1-2. The officers recovered a black 9mm semi-automatic firearm, loaded with thirteen live rounds of ammunition. *Id.* at 2. At the time of the arrest, Mr. Watford was legally prohibited from possessing a firearm due to his previous felony convictions. *Id.* at 3. He was also on probation for multiple sentences. *Id.* On December 14, 2023, Mr. Watford was charged by federal indictment with one count of possession of a firearm by a person previously convicted of a crime punishable by more than one year of imprisonment, in violation of 18 U.S.C. § 922(g)(1).

Mr. Watford moves to dismiss the single-count indictment, arguing that Section 922(g)(1) is unconstitutional under the Second Amendment, both on its face and as applied to him individually. Mr. Watford's filed his motion following the United States Supreme Court ruling in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) and the Third Circuit's recent *en banc* decision in *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023).

Using the two-step framework for as-applied challenges articulated in *Range*, Mr. Watford asserts that: (1) the plain text of the Second Amendment presumptively protects him as a member of "the people" and (2) the Government cannot demonstrate that the application of Section 922(g)(1) to him is "consistent with this nation's historical tradition of firearm regulation." ECF 20 at 6-8. Mr. Watford further argues that even if this Court were to reject his as-applied challenge, Section 922(g)(1) is facially unconstitutional because: (1) there is no "founding era tradition" of felon disarmament; (2) the statute is unconstitutionally vague; and (3) the statute is inconsistent with the original public meaning of the Commerce Clause. *Id.* at 12-15. Mr. Watford concedes that his third argument is foreclosed by precedent, and thus this Court will not address it further.

The Government responds that the indictment should not be dismissed, since Section 922(g)(1) is constitutional as applied to Mr. Watford. ECF No. 23. The Government argues that Mr. Watford's conduct falls beyond the protection of the Second Amendment because: (1) he did not possess the firearm for any lawful purpose; and (2) he was on probation at the time of the offense. *Id.* The Government goes on to argue that even if Mr. Watford and his conduct is in the purview of the Second Amendment, Section 922(g)(1) survives the *Bruen*/*Range* historical inquiry because felon firearm dispossession is analogous to historical regulations aimed at disarming dangerous or otherwise non-law abiding groups of people.

## II. STANDARD OF REVIEW

Under Federal Rule of Criminal Procedure 12(b)(1), a party may "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R Crim. P. 12(b)(1). In cases involving an as-applied challenge to a criminal indictment, the Court must determine whether a law with some permissible uses "is nonetheless unconstitutional as applied" to the movant's specific conduct. *Spence v. Washington*, 418 U.S. 405, 414 (1974). Conversely, successful facial challenges require that a law be struck down in its entirety because it "could never be applied in a valid manner," *Members of City Council of City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 789 (1984). The high burden for facial invalidation requires the challenger to establish that "no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).

## III. ANALYSIS

The Second Amendment provides that: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend II. In *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008), the Supreme Court determined "that the Second Amendment conferred an individual right to keep and bear arms" unconnected to militia service. However, the Court emphasized that "the right was not unlimited, just as the First Amendment's right of free speech was not." *Id.* The Court therefore did "not read the Second Amendment to protect the right of citizens to carry arms for any sort of confrontation, just as we do not read the First Amendment to protect the right of citizens to speak for any purpose." *Id.*

The Supreme Court has repeatedly stated that its Second Amendment jurisprudence does not disturb presumptively lawful gun regulations like felon disarmament. *Heller*, which announced the right to keep firearms in the home for self-defense, made clear that "nothing in our opinion

should be taken to cast doubt on the longstanding prohibitions on the possession of firearms by felons." 554 U.S. 570, 626 (2008). *McDonald v. City of Chicago, Illinois* reiterated that, like all constitutional rights, the right to bear arms is not unlimited:

> It is important to keep in mind that *Heller*, while striking down a law that prohibited the possession of handguns in the home, recognized that the right to keep and bear arms is not "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as "prohibitions on the possession of firearms by felons and the mentally ill," "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." We repeat those assurances here.

561 U.S. 742, 786 (2010) (quoting *Heller*, 554 U.S. 570 at 626-27 (internal citations omitted)).

*New York State Rifle & Pistol Association, Inc. v. Bruen* set forth a history-based framework for determining whether a firearm regulation is constitutional under the Second Amendment. 597 U.S. 1 (2022). Rejecting the use of means-end scrutiny in gun regulation cases, *Bruen* introduced a two-prong test for courts to apply. The first prong asks whether "the Second Amendment's plain text covers an individual's conduct." *Id.* at 17. The second prong requires the government to affirmatively demonstrate that "the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.*

As to the second prong, the Second Amendment "requires only that the government identify a well-established and representative historical analogue, not a historical twin." *Id.* at 30. Thus, when confronted with regulations "that were unimaginable at the founding," courts must reason "by analogy," which "requires a determination of whether the two regulations are relevantly similar" using "at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 29. The Court explained that the question is, "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified."

In *Range v. Attorney General*, the Third Circuit considered an as-applied challenge to 18 U.S.C. § 922(g)(1), seeking a declaratory judgment that the felon-in-possession statute was unconstitutional as applied to the defendant and requesting injunctive relief. 69 F.4th 96 (3d Cir. 2023) (en banc). In a "narrow" decision, the Court held that the application of the statute to the defendant, whose only criminal conviction was for welfare fraud decades prior, violated his rights under the Second Amendment. *Id.* at 98, 106.

In 1995, Bryan Range pled guilty to one misdemeanor count of making false statements to obtain food stamp assistance in violation of 62 Pa. Stat. Ann. § 481(a). *Id.* at 98. He was sentenced to three years of probation, which he completed without any violations of supervision. *Id.* In the decades since this conviction, Range's only other infractions were for minor traffic tickets and a summary offense for fishing without a license. *Id.* Because Range's food stamp conviction carried a possible penalty of up to five years in prison, he was classified under federal law as a person prohibited from possessing a gun. *See id.*; 18 U.S.C. § 922(g)(1). Unlike the Defendant in the present case, Range was never actually charged with a criminal violation of the statute. *Id.* Instead, he brought a civil suit after being twice rejected from purchasing a firearm by Pennsylvania's instant background check. *Id.*

Applying *Bruen* to Range's ineligibility to possess a firearm pursuant to Section 922(g)(1), the Third Circuit first assessed whether the "Second Amendment applies to a person and his proposed conduct," finding that the conclusion will almost always be yes, even when a challenger has a lengthy criminal record. *Range*, 69 F.4th at 101-03. Relying on *Heller*, the majority held that Range was indeed one of "the people" as the constitutional text refers to all Americans and not only law-abiding persons. *Id.* at 101. The Third Circuit agreed with a statement of then-Judge Barrett that "all people have the right to keep and bear arms," though the legislature may

constitutionally "strip certain groups of that right." *Id.* at 102 (quoting *Kanter v. Barr*, 919 F.3d 437, 452 (7th Cir. 2019) (Barrett, J., dissenting)).

Having determined that the Second Amendment applied to Range and his proposed conduct, the Court next turned to whether Section 922(g)(1)'s permanent disarmament, as applied to Range, was "consistent with the Nation's historical tradition of firearm regulation." *Id.* at 103 (citing *Bruen*, 597 U.S. at 17). The government bears the burden of proof to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 101 (citing *Bruen*, 597 U.S. at 19). To satisfy this burden, the government must point to "historical analogues" establishing that founding-era governments disarmed people sufficiently similar to the individual contesting the regulation. *Id.* The Third Circuit found that Range and "his individual circumstances" did not justify stripping him of his right to bear arms because the government failed to meet its burden of establishing that disarming people "like Range" fits within our Nation's history of disarming those who pose a threat to the orderly functioning of society. *Range*, 69 F.4th at 105.

### A.   Section 922(g)(1) is Constitutional as Applied to Mr. Watford

The Court now turns to the question of whether 18 U.S.C. § 922(g)(1) withstands an as-applied challenge by someone who has been convicted of felony drug distribution and prior firearm violations. Mr. Watford was charged by indictment with violating 18 U.S.C. § 922(g)(1), which prohibits any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

The Court begins with assessing whether the text of the Second Amendment applies to Mr. Watford and his conduct. Under *Range* and as agreed on by the parties, Mr. Watford is considered one of "the people" afforded Second Amendment protection. The Government argues that Mr. Watford's *conduct* is not protected under the Second Amendment because he did not possess a firearm for a lawful purpose, the gun was allegedly stolen, and Mr. Watford was permissibly barred from possessing a gun because he was on probation. Notwithstanding these arguments, the Court need not determine whether the Second Amendment covers Mr. Watford's conduct because the Government has met its burden to show that Section 922(g)(1), as applied to Mr. Watford, is consistent with the historical tradition delineating the outer bounds of the right to keep and bear arms.

The Government carries the burden to affirmatively show that Section 922(g)(1) is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17. The "central considerations" in deciding whether a modern regulation is "relevantly similar" to a historical analogue are "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 29; *see also Range*, 69 F.4th at 103. This Court is satisfied that, in contrast to *Range*, the Government here has met its burden of showing that prohibiting someone with prior recent drug trafficking, robbery, and gun convictions is consistent with America's historical tradition of firearm regulation.

Citing to historical analogues from the very first colonists to the post-civil war era, the Government has provided an extensive historical record establishing that this Nation has regularly restricted firearm access to those thought to be dangerous. *See* ECF No. 23 at 18–21. As the Supreme Court noted in *Bruen*, if individuals were "reasonably accused of intending to injure another or breach the peace," they could be subject to firearm restrictions that did not apply to

others. *Bruen*, 597 U.S. at 41. Prior to and following ratification of the Second Amendment, gun regulations disarmed people who "posed a potential danger." *Range*, 69 F.4th 96 at 109–10 (Porter, J., concurrence). Importantly, the *Range* majority did not reject the historical record presented by the government, it merely found the record inapplicable to somebody like Mr. Range, whose disarmament was based on one decades old, non-violent conviction.

Mr. Watford's criminal history differs substantially from Mr. Range, whose only predicate conviction stemmed from an inaccurate accounting of household income on a food stamp application over 25 years ago. Mr. Watford's record is more robust, more recent, and unquestionably more concerning. In 2015, Mr. Watford was convicted of carrying a firearm without a license in violation of 18 Pa. Cons. Stat. § 6106(a)(1) and carrying firearms in public in Philadelphia in violation of 18 Pa. Cons. Stat. § 6108. ECF No. 23 at 4. In 2016, he was convicted of manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance in violation of 35 Pa. Cons. Stat. § 780-113(a)(30). *Id.* In 2019, Mr. Watford was convicted of unlawful possession of a firearm in violation of 18 Pa. Cons. Stat. § 6105(a)(1). *Id.* In 2021, Mr. Watford was convicted of criminal mischief in violation 18 Pa. Cons. Stat. § 3304(a)(4), fleeing or attempting to elude an officer in violation of 75 Pa. Cons. Stat. § 3733(a), and robbery in violation of 18 Pa. Cons. Stat. § 3701(a)(1)(iv). *Id.* In 2023, Mr. Watford was convicted of unlawful possession of a firearm in violation of 18 Pa. Cons. Stat. § 6105(a)(1) and possession of a firearm with a manufacturer number altered in violation of 18 Pa. Cons. Stat. § 6110.2(a).

Unlike Mr. Range's non-violent fraud offense, Mr. Watford's prior convictions fall within the sweep of appropriate historical gun regulation analogues. *Range* was a narrow decision that does not upset the long-standing prohibition of drug traffickers and other dangerous, non-law-abiding people from possessing firearms. Though the Government's presentation of historical

analogues was not enough to justify the restriction of Mr. Range's Second Amendment rights, there is strong historical support for the disarmament of people who pose a danger to society. If we use the early American laws cited by the Government as rough historical analogues, the question of "how and why the regulations burden a law-abiding citizen's right to armed self-defense" leads to the conclusion that these laws are relevantly similar to a law that prohibits drug traffickers or habitual unlawful gun possessors from possessing firearms in the future. *Bruen*, 597 U.S. at 29. While the founding generation could hardly have imagined the intolerable levels of gun violence our nation is presently facing, they too determined that disarmament of certain individuals was the way to prevent violence – albeit often in the context of disarming racial minorities and other groups seen as subversive by lawmakers at the time.

### B.     Section 922(g)(1) is Facially Constitutional

The Court next turns to Mr. Watford's contention that 18 U.S.C. § 922(g)(1) is facially unconstitutional because the statute is unconstitutionally vague and violates the Commerce Clause. These arguments are without merit. A criminal statute is impermissibly vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited" or "is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). To be constitutional, "criminal statutes need only give 'fair warning' that certain conduct is prohibited." *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1136 (3d Cir. 1992).

Mr. Watford cannot show that Section 922(g)(1) is unconstitutional as applied to his case, let alone in all circumstances. The felon disarmament statute is clear on its face. It provides explicit notice prohibiting the possession of a firearm by any person who has previously been convicted of a crime punishable by more than a year in prison (or of certain misdemeanors as specifically defined). The text of the statute gives unambiguous notice to all people who fall within this

category. However, the fact that "the Second Amendment might then constitutionally preclude punishment in certain instances should not lead us to conclude otherwise." *United States of America v. Kalief Ladson*, No. 23-161-1, 2023 WL 6810095, at *5 (E.D. Pa. Oct. 16, 2023). In *Range*, the appellant raised only an "as-applied" challenge to Section 922(g)(1), and the Third Circuit had no occasion to consider whether the statute is facially unconstitutional. *Range*, 69 F.4th at 100.

### IV. CONCLUSION

The Supreme Court has regularly made clear that the Second Amendment is not a "regulatory straightjacket." *Bruen*, 597 U.S. at 30. The government needs to be able to respond to the intolerably high incidence of gun violence our nation is facing—an issue the founding generation simply did not have to deal with. Mr. Watford, who has repeatedly been convicted of violating gun laws and other dangerous crimes, is decidedly not like the appellant in *Range.* Unlike the facts presented in *Range*, the historical record supports the disarmament of Mr. Watford and people with convictions like his. For the foregoing reasons, the Court concludes that the indictment, and the prohibition on dangerous felons possessing firearms, does not violate Mr. Watford's Second Amendment rights. Accordingly, Mr. Watford's motion to dismiss the indictment will be denied. An appropriate Order to follow.